UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVE PTAK,

       Plaintiff,                                 Case No. 1:10-cv-23

v.                                                  HON. JANET T. NEFF

FOREST PHARMACEUTICALS, INC.,

       Defendant.
_____/

## OPINION

     Plaintiff Steve Ptak filed this action against Defendant Forest Pharmaceuticals, Inc., his former employer, alleging age discrimination and retaliation. The matter is before the Court on Defendant's April 6, 2011 Motion for Summary Judgment (Dkt 32). Plaintiff filed a response to Defendant's motion (Dkt 40), and Defendant filed a reply (Dkt 43). Having fully considered the written briefs and accompanying exhibits, the Court finds that the relevant facts and arguments are adequately presented in these materials and that oral argument would not aid the decisional process. *See* W.D. Mich. LCivR 7.2(d). For the reasons that follow, the Court concludes that Defendant is entitled to summary judgment.

## I. BACKGROUND

     Plaintiff, whose date of birth is April 27, 1967, was a territory sales representative for Defendant (Undisputed Statement of Material Fact [SMF] ¶ 1). Plaintiff visited physicians in a set geography and promoted certain of Defendant's prescription pharmaceutical products (*id.*). Plaintiff reported to a division manager (*id.* ¶ 3). Division managers report to regional directors (*id.*).

Regional directors report to area business directors (*id.*). Stephen Ley became Plaintiff's division manager in April 2005, and Ryan Vickers became Plaintiff's regional director in December 2006 (*id.* ¶ 6). April Amory became Plaintiff's area business director in November 2005 (*id.*).

Defendant utilizes progressive discipline, including a letter of concern, formal warning, probation, and finally discharge from employment (Undisputed SMF ¶ 5). The discharge of a territory sales representative requires the approval of the respective area business director and human resources manager for that area (*id.*).

Ley's initial Field Trip Evaluations (FTEs) of Plaintiff were "above standard" (Undisputed SMF ¶ 7). However, Defendant contends that as Ley spent more time with Plaintiff, Plaintiff's evaluation scores decreased, with the primary areas of concern being "problem solving" and "lack of impact" (Defendant's Statement of Material Fact [Def. SMF] ¶ 7). Plaintiff, in contrast, "adamantly denied that his performance deteriorated" (Plaintiff's Statement of Material Fact [Pl. SMF] ¶ 7). Citing these concerns, Ley issued Plaintiff a Letter of Concern in March 2008 and a Formal Warning in May 2008 (Undisputed SMF ¶¶ 8-9). In September 2008, Plaintiff was placed on probation (*id.* ¶ 10).

In October 2008, Plaintiff contacted Karen Swint, a field sales human resources manager with Defendant because, at that point, he felt he was going to be discharged (Undisputed SMF ¶ 11). Defendant contends that Swint investigated the matter but found no evidence of age discrimination toward Plaintiff nor any evidence that Plaintiff's reviews and evaluations were improper (Def. SMF ¶ 11). Plaintiff contends that a dispute exists as to whether Swint investigated his age discrimination claim (Pl. SMF ¶ 11).

2

Also in October 2008, Roger Brinks replaced Ley to become Plaintiff's division manager (Undisputed SMF ¶ 13). By March 2009, Brinks had conducted three field trips with Plaintiff, each of which similarly resulted in a substandard evaluation (*id.*). Specifically, Defendant delineates the following four instances demonstrating a lack of professionalism, infractions that Plaintiff committed while on probation: (1) "secretly tape recording numerous conversations in the workplace," including his meetings with Ley and Brinks and a physician visit, "despite being instructed not to do so"; (2) "violating Forest's policy regarding alcohol consumption at a dinner speaker program Plaintiff conducted"; (3) failing to "witness a physician sign for prescription drug samples received," an offense that can alone lead to termination of employment; and (4) using a racial slur ("the N-word") with a physician during the physician visit (Def. SMF ¶¶ 14-18). Plaintiff, in contrast, contends that he "continued to strive and succeeded in improving his performance during the disciplinary process leading up to the wrongful discharge" (Pl. SMF ¶ 14).

Regional director Vickers did not recommend that Plaintiff be discharged from employment, despite Plaintiff's receipt of deficient evaluations from his new division manager; instead, in March 2009, Vickers extended Plaintiff's probation (Undisputed SMF, ¶ 19). From April through July 2009, Plaintiff took a leave of absence (*id.* ¶ 20). Plaintiff also applied for and received benefits under Defendant's short-term disability policy, which allows up to six months' paid leave for qualifying, non-work-related reasons (*id.*). Following this leave, Vickers again extended Plaintiff's probation (*id.* ¶ 21). On September 18, 2009, when Plaintiff was 42 years old, his employment was terminated (*id.* ¶ 22). Plaintiff does not dispute that several territory sales representatives in Plaintiff's division, region and area who were older than him remained employed by Defendant (*id.* ¶ 32).

On January 11, 2010, Plaintiff filed a Complaint in this Court, alleging age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* (Count I) and Michigan's Elliott-Larsen Civil Rights Act (ELCRA), MICH. COMP. LAWS § 37.2202 *et seq.* (Count II). Plaintiff filed an Amended Complaint on April 28, 2010 (Dkt 14), adding a claim for "Violations of ELCRA (Retaliation)" (Count III).

Defendant filed a Pre-Motion Conference request on November 12, 2010, seeking to file a Motion for Summary Judgment (Dkt 20). Following a Pre-Motion Conference on January 19, 2011, this Court issued a briefing schedule. The parties filed their motion papers on April 6, 2011 (Dkts 32-45).

## II. MOTION STANDARD

A motion for summary judgment is properly granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In considering a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## III. DISCUSSION

A. Age Discrimination

In Counts I and II, Plaintiff presents claims of age discrimination under federal and state law. The ADEA provides that it shall be unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against an individual with respect to his compensation,

4

terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Similarly, the ELCRA prohibits "discriminat[ing] against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . age." MICH. COMP. LAWS § 37.2202(1)(a).

"'The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination.'" *Geiger v. Tower Automotive,* 579 F.3d 614, 620 (6th Cir. 2009) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000)). An age discrimination claim may be proved through either direct or circumstantial evidence. *Geiger*, 579 F.3d at 620, 626; *Rowan v. Lockheed Martin Energy Sys., Inc.,* 360 F.3d 544, 548 (6th Cir. 2004); *Town v. Michigan Bell Tel. Co.,* 568 N.W.2d 64, 67-68 (Mich. 1997). Plaintiff does not dispute Defendant's assertion in this case that there is no direct evidence of any age discrimination (Def. Mot. Br., Dkt 33 at 2; Pl. Resp. Br., Dkt 41 at 3).

To state a prima facie case on a disparate treatment theory using circumstantial evidence, a plaintiff must establish the four elements of the well-known test from *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973): (1) that he was a member of a protected class; (2) that he was discharged; (3) that he was qualified for the position held; and (4) that he was replaced by someone outside of the protected class. *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264-65 (6th Cir. 2010); *Geiger*, 579 F.3d at 622. The same evidentiary burdens apply in cases brought under Michigan's Elliott-Larsen Act. *Hughes v. Gen. Motors Corp.*, 212 F. App'x 497, 501, 2007 WL 62614, *3 (6th Cir. 2007); *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 666 N.W.2d 186, 193 (Mich. 2003).

5

Once a plaintiff satisfies his prima facie burden, the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action. *Schoonmaker,* 595 F.3d at 264 (citing *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008)). If the employer meets this burden, then the burden of production shifts back to the plaintiff to show that the employer's explanation was a mere pretext for intentional age discrimination. *Id.* The burden of persuasion, however, remains on the ADEA plaintiffs at all times to demonstrate "'that age was the 'but-for' cause of their employer's adverse action.'" *Geiger*, 579 F.3d at 620 (quoting *Gross v. FBL Fin. Services, Inc.*, ___ U.S. ___; 129 S. Ct. 2343, 2351 n.4; 174 L. Ed. 2d 119 (2009)). Further, the Sixth Circuit Court of Appeals has held that a court may not consider an employer's alleged nondiscriminatory reason for taking an adverse employment action when it is analyzing the plaintiff's prima facie case. *Schoonmaker,* 595 F.3d at 264-65 (citing *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003) (en banc)).

In the motion at bar, Defendant argues that Plaintiff's age discrimination claims cannot survive summary judgment because Plaintiff cannot establish a prima facie case of age discrimination where he has not established that he was qualified for his position, the third element of a prima facie case (Def. Mot. Br., Dkt 33 at 2-3). Citing the Sixth Circuit's opinion in *Wexler,* Plaintiff argues in response that "it would be an error for this Court to consider the third element of the prima facie case" where Defendant's purported legitimate non-discriminatory reason for Plaintiff's termination is his performance (Pl. Resp. Br., Dkt 41 at 4-5).

Plaintiff incorrectly reads *Wexler* as completely eliminating this Court's consideration of the third element of the prima facie case. The Sixth Circuit did not instruct courts to forego consideration of the third element but to consider the evidence of a plaintiff's qualifications

*independent* of the non-discriminatory reason an employer produces as its reason for terminating the employee. *Wexler,* 317 F.3d at 575. In other words, courts are to focus on objective qualifications, criteria such as education, experience in the relevant industry, and demonstrated possession of the required general skills. *Id.* at 575-76. The prima facie burden of showing that he is qualified continues to rest with the plaintiff. *Id.*

Plaintiff was therefore required to present credible evidence showing that his qualifications are at least equivalent to the minimum objective criteria required for employment in the field of pharmaceutical sales. However, in crafting his argument in the manner he did, Plaintiff concomitantly failed to point to any evidence supporting the third element of his prima facie case. Hence, there is insufficient proof in the record from which to conclude, as a matter of law, that Plaintiff is qualified.

However, even assuming arguendo that Plaintiff presented a prima facie case, Defendant has articulated a legitimate, non-discriminatory reason for discharging Plaintiff, to wit: his work performance, and Defendant has presented evidence demonstrating that Plaintiff was not meeting his employer's legitimate expectations. Defendant identifies several performance issues that led to its decision to terminate Plaintiff's employment: that two different managers independently evaluated Plaintiff at a substandard level; that Plaintiff does not deny that he used a racial slur during a physician visit; and that Plaintiff was cited for an expense violation and for failing to witness a physician sign for prescription drug samples, all while on probation (Def. Mot. Br., Dkt 33 at 3).

"A plaintiff can refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action 'by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant

7

the challenged conduct.'" *Wexler,* 317 F.3d at 576 (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)).

Here, Plaintiff first argues that the fact that Defendant's evaluation process includes "subjective components" should alone preclude summary judgment in Defendant's favor because "matters of motive and intent should not be decided at the summary disposition stage" (Pl. Resp. Br., Dkt 41 at 5-6). Plaintiff's argument relies on isolated statements from various factually and legally distinguishable cases, including *Steadman v. Lapensohn*, 288 N.W.2d 580, 583 (Mich. 1980) (a libel case), *Sullivan v. Thomas Organization*, 276 N.W.2d 522, 526 (Mich. Ct. App. 1979) (a disparagement of title action), and *People v. McRunels*, 603 N.W.2d 95, 102 (Mich. Ct. App. 1999) (a criminal case involving the charge of assault with intent to commit murder).

Plaintiff's argument wholly lacks merit. Even if Defendant's reasons for discharging Plaintiff from its employ were subjective, that evidence does not raise an inference of age-based discrimination. *See Schoonmaker*, 595 F.3d at 269-70 (citing *Geiger*, 579 F.3d at 625 (holding that employer's preference for another employee was not actionable unless motivated by discriminatory animus); *Browning v. Dep't of the Army*, 436 F.3d 692, 697 (6th Cir. 2006) (holding that a supervisor's decision to value certain criteria higher than other criteria listed in job application did not raise inference of pretext; noting that the law does not require employer to make perfect decisions, but simply prevents employers from taking adverse employment actions for impermissible, discriminatory reasons); and *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987) ("So long as its reasons are not discriminatory, an employer is free to choose among qualified candidates.")).

Likewise, Plaintiff's own subjective opinions and conclusory statements about his work performance are also insufficient to survive summary judgment. *See Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008) (affirming summary judgment stating that plaintiff "presented nothing more than his own subjective opinion to justify his allegations" and "[s]uch conclusory statements are not sufficient to survive summary judgment"). Therefore, to the extent Plaintiff "disputes" and "challenges" the factual assertions made in the letter of concern and the written warning and complains that Ley and Brinks "abruptly changed" their stated positions about his work performance (Pl. Resp. Br., Dkt 41 at 7, 9), Plaintiff cannot defeat Defendant's motion for summary judgment merely by challenging his employer's business judgment. *See Schoonmaker, supra*; *Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996) ("The law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with."). Plaintiff's own assessment of his work performance is not evidence demonstrating that the cited performance issues did not motivate his termination.

Last, Plaintiff proffers as "additional evidence ... that ... the reasons given were not the actual reasons for the termination of Plaintiff's employment" that "Vickers had announced on more than one occasion that the older reps were going to be replaced by younger individuals" and that Vickers made statements in February 2008 "that Defendant did not want him anymore" and "that Defendant did not want him to perform" (Pl. Resp. Br., Dkt 41 at 7-8). Statements allegedly showing an employer's age bias are to be evaluated by considering "whether the comments were made by a decision maker or by an agent within the scope of his employment; whether they were related to the decision-making process; whether they were more than merely vague, ambiguous, or isolated

9

remarks; and whether they were proximate in time to the act of termination." *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir. 1994).

Plaintiff does not specify when Vickers allegedly made the comments announcing the replacement of "older" sales representatives, nor does Plaintiff specify whether the comments related to the decision-making process or occurred proximate in time to Plaintiff's termination. Hence, these comments, even if believed, are insufficient to create a triable issue as to pretext. The comments Vickers allegedly made in February 2008 are also insufficient to create a triable issue as to pretext inasmuch as the meaning of the comments is unclear. The comments do not even suggest age discrimination, much less address or rebut the evidence regarding the reason motivating Plaintiff's discharge.

In sum, even assuming arguendo that Plaintiff has satisfied his own prima facie burden, Plaintiff has not rebutted Defendant's legitimate nondiscriminatory reason for discharging his employment. The evidence presented is so one-sided that the Court determines that Defendant must prevail as a matter of law on Plaintiff's age discrimination claims in Counts I and II.

B.   Retaliation

In Count III, "Violations of ELCRA (Retaliation)," Plaintiff alleges that after complaining to human resources about conduct he believed constituted age discrimination, his employment was "suddenly and wrongfully terminated by the Defendant on September 18, 2009, [i]n retaliation for Plaintiff's protected activity" (Dkt 14, Am. Compl. ¶ 43). The ELCRA prohibits retaliation against a person "because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." MICH. COMP. LAWS § 37.2701(a).

Defendant first argues that it is entitled to summary judgment of Count III because Plaintiff failed to exhaust his administrative remedies (Def. Mot. Br., Dkt 33 at 10). However, as Plaintiff points out, he brought his retaliation claim under only state law (Pl. Resp. Br., Dkt 41 at 10). The ELCRA does not require a plaintiff to exhaust administrative remedies before proceeding with a civil suit. MICH. COMP. LAWS § 37.1607; *Stevens v. McLouth Steel Prods. Corp.*, 446 N.W.2d 95, 100 n.5 (Mich. 1989); *Marsh v. Civil Serv. Dep't*, 370 N.W.2d 613, 616 (Mich. Ct. App. 1985).

Next, Defendant argues that summary judgment is warranted because Plaintiff admitted in his deposition testimony that no retaliation cause of action exists (Def. Mot. Br., Dkt 33 at 11-12). However, as Plaintiff points out (Pl. Resp. Br., Dkt 41 at 11-12), and Defendant concedes (Def. Reply, Dkt 43 at 9 n.7), Plaintiff made his statement while reviewing a copy of his original complaint, which did not include the retaliation claim. The Court declines to rely on Plaintiff's statement, made in this factual context, as determining the outcome of the legal question before it.

Last, and more persuasively, Defendant argues that Plaintiff lacks evidentiary support for claiming that his discharge from employment was retaliatory (Def. Mot. Br., Dkt 33 at 12-13). In order to establish a prima facie case of unlawful retaliation under the ELCRA, a plaintiff must show that (1) he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. *DeFlaviis v. Lord & Taylor, Inc.*, 566 N.W.2d 661, 663 (Mich. Ct. App. 1997).

Plaintiff reiterates that the state of mind of Vickers, Ley and Brinks is in question (Pl. Resp. Br., Dkt 41 at 14-15), but his retaliation claim fails because there is no evidence in the record of a causal connection between Plaintiff's internal complaint and his discharge. "In order to show

causation in a retaliatory discrimination case, 'plaintiff must show something more than merely a coincidence in time between protected activity and adverse employment action.'" *Conti v. Am. Axle and Mfg., Inc.*, 326 F. App'x 900, 913 (6th Cir. 2009) (quoting *West v. Gen. Motors Corp.*, 665 N.W.2d 468, 472 (Mich. 2003)). "Something more than a temporal connection between protected conduct and an adverse employment action is required to show causation where discrimination-based retaliation is claimed." *Id.*

It is undisputed that when Plaintiff made his internal complaint to human resources, he had already progressed through every level of Defendant's disciplinary process, short of discharge. Indeed, Plaintiff testified that he made the complaint because he thought his discharge was imminent. After Plaintiff made his complaint, Defendant did not discharge him but allowed him a three-month leave of absence — with full salary and benefits — and twice extended his probation. The evidence presented on causation is so one-sided that the Court determines that Defendant must prevail as a matter of law on Plaintiff's retaliation claim in Count III.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Dkt 32) is properly granted. An Order and corresponding Judgment will be entered consistent with this Opinion.

DATED: May 25, 2011            /s/ Janet T. Neff
                                              JANET T. NEFF
                                              United States District Judge